UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRITTANY D. KIMBALL                                        CIVIL ACTION NO.:

VERSUS

SKR CONSTRUCTION, LLC,
CF INDUSTRIES HOLDINGS, INC., AND
JOSHUA FALCON

_____

## COMPLAINT
_____

NOW INTO COURT, through undersigned counsel, comes Brittany D. Kimball ("Ms. Kimball"), who respectfully submits this *Complaint* and avers as follows:

1.

Made Defendants herein and liable unto Ms. Kimball are the following:

- SKR Construction, LLC ("SKR"), a Louisiana limited liability company, with its principal place of business in Louisiana located at 908 W. Orice Roth Road, Gonzales, LA 70737;

- CF Industries Holdings, Inc. ("CF Industries"), an Illinois corporation that is not authorized to do business in Louisiana, but is doing business in Louisiana;

- Joshua Falcon ("Mr. Falcon"), an individual of the full age of majority domiciled in the State of Louisiana.

2.

Ms. Kimball brings this action under Title VII of the Civil Rights Act of 1964.

3.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this action is brought under Title VII of the Civil Rights Act of 1964. Additionally, this Court has supplemental jurisdiction over Ms. Kimball's tort claim pursuant to 28 U.S.C. §1367.

4.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this lawsuit occurred within this district.

***Statement of Facts***

5.

On information and belief, SKR and CF Industries have entered into a contract wherein SKR provides certain labor and other services to CF Industries in the industrial plant owned and operated by CF Industries located in Donaldsonville, Louisiana (the "CF Plant").

6.

Ms. Kimball was employed directly and jointly with SKR as a laborer. At all times relevant to this matter, Ms. Kimball only worked at the CF Plant.

7.

On information and belief, Mr. Falcon was the Supervisor of the Ammonium 1 and 2 units of the CF Plant. Mr. Falcon had direct supervisory authority over both SKR and Ms. Kimball.

8.

On information and belief, Mr. Falcon, on behalf of CF Industries, would issue work orders to SKR wherein Mr. Falcon would specifically request that Ms. Kimball would perform the work, or portions of the work, relating to certain work orders.

9.

Mr. Falcon had authority to direct Ms. Kimball's daily activities in the CF Plant. Mr. Falcon would routinely manage and direct the daily activities of Ms. Kimball.

10.

On or about June 19, 2018, Mr. Falcon directed Ms. Kimball to clean up a warehouse located in the CF Plant.

11.

When Ms. Kimball first began cleaning the warehouse, she was alone inside the warehouse. At some point during the project, Mr. Falcon entered the warehouse and began staring up at the shelves in the room that Ms. Kimball was organizing, and directing Ms. Kimball about the items on the shelves.

12.

In response to directions from Mr. Falcon, Ms. Kimball climbed on top of a large flange to access the shelves and to see the items on the shelf that Mr. Falcon was discussing. As Ms. Kimball was standing on the flange, Mr. Falcon approached Ms. Kimball from behind, grabbed her waist, twisted her around, and pulled her on top of him in a sexually provocative manner. Ms. Kimball rebuffed this unwanted physical touching.

13.

Ms. Kimball then turned to her left in order to distance herself from Mr. Falcon. Thereafter, Mr. Falcon approached Ms. Kimball from behind and proceeded to rub his penis against the buttocks of Ms. Kimball in a highly sexually provocative manner. Ms. Kimball demanded that Mr. Falcon stop. Mr. Falcon immediately left the area.

14.

Ms. Kimball remained in the warehouse for several moments in order to emotionally collect herself, after a few minutes, Ms. Kimball sent a text message to Mr. Falcon stating the following:

> So what happened today seriously confused me. I think we may have some miscommunication? I was under the impression we were work related friends. I must say it really took me off guard when you grabbed me up then rubbed your dick on me. I need my job and don't want to be thought of as a plant whore. I don't want this to cause me to lose my job either. I look at you as my work friend and boss. This goes no further than here. I don't want it to be awkward between us and I want us to stay work related friends. I love my job and really hope this doesn't affect it in any way.

15.

Mr. Falcon responded to Ms. Kimball's above-quoted text stating "[y]eah that was dumb I'm sorry," and "[i]t won't happen again promise. Friends!!" and "[n]ow I feel horrible about that. Hope you don't hold that against me."

16.

After the incident with Mr. Falcon, Ms. Kimball called her direct supervisor with SKR, Jamone Johnson, to notify him about the matter. Mr. Johnson drove over to Ms. Kimball and told her that she needs to keep the matter quite and work it out with Mr. Falcon.

17.

Due to the stress and embarrassment of the incident, Ms. Kimball missed three days of work. Upon her return to work, Mr. Falcon met Ms. Kimball by the Aluminum 1 unit and again attempted to apologize for the incident. Within an hour of this conversation with Mr. Falcon, Mr. Johnson called Ms. Kimball and instructed her to "make it right," with Mr. Falcon.

4

18.

In an emotionally weak moment, Ms. Kimball confided the incident with Mr. Falcon with a superintendent named Lucy. Soon thereafter, Mr. Johnson again instructed Ms. Kimball that she needs to keep the incident with Mr. Falcon quite and to "make it right" with him.

19.

After notifying Mr. Johnson and Lucy about the incident, sexually explicit graffiti regarding Ms. Kimball began appearing throughout the CF Plant. Ms. Kimball notified SKR about the graffiti. SKR took no action to have the graffiti removed, and dismissed her complaints about same.

20.

Around the same time that the sexually explicit graffiti began appearing in the CF Plant, co-workers began making negative comments to Ms. Kimball regarding the incident with Mr. Falcon and began to be more distant toward Ms. Kimball. Due to this pressure, having to work in close proximity to Mr. Falcon, and having to observe sexually explicit graffiti regarding herself, Ms. Kimball had no other option but to resign her position with SKR.

*First Cause of Action—Title VII Violation*

21.

Ms. Kimball is the victim of unwelcome sexual physical conduct, which had the effect of unreasonably interfering with Ms. Kimball's work performance and created an intimidating, hostile, and/or offensive working environment. As such, the Defendants conduct violated Title VII of the Civil Rights Act of 1964.

22.

The sexual harassment of Ms. Kimball was made known to SKR; however, SKR failed to take immediate and appropriate corrective action. In fact, SKR refused to take any action and instructed Ms. Kimball to address the matter directly with her attacker.

23.

For the purpose of this Title VII claim, CF Industries is the joint employer of Ms. Kimball because it had the authority, and in fact exercised that authority, to direct the daily activities of Ms. Kimball. Additionally, CF Industries had the ability to control the terms of Ms. Kimball's employment by (1) controlling Ms. Kimball's daily activities, (2) controlling Ms. Kimball's access to the CF Plant, and (3) limiting the amount of work orders that SKR would receive.

24.

Both SKR and CF Industries each employ more than 15 individuals for the past twenty calendar weeks respectively.

25.

Due to the Title VII violations of SKR and CF Industries, Ms. Kimball has suffered mental and emotional anguish, inconvenience, and embarrassment.

26.

Ms. Kimball seeks recovery of all available damages from SKR and CF Industries, including back-pay, lost benefits, costs associated with obtaining a new job, general damages, punitive damages, reasonable attorney's fees, and costs of these proceedings.

27.

On or about October 3, 2018, Ms. Kimball filed a charge with the EEOC against SKR and CF Industries. On or about May 9, 2019, the EEOC issued a Notice of Right to Sue letter to Ms. Kimball relative to both SKR and CF Industries, all as more fully shown as Exhibit A, attached hereto and made a part hereof. Ms. Kimball has exhausted all of her administrative remedies, and this matter is ripe for judicial intervention.

### *Second Cause of Action—Intentional Tort of Battery*

28.

Ms. Kimball alleges the following cause of action in the alternative to the first cause of action asserted herein.

29.

Ms. Kimball re-alleges and incorporates *in extenso* all previous allegations contained in this Complaint.

30.

The allegations of Paragraphs 11, 12, and 13 of this Complaint constitute an intentional tort of battery because Mr. Falcon made a harmful and offensive contact with Ms. Kimball, resulting from an act intended to cause Ms. Kimball to suffer such a contact. Accordingly, Mr. Falcon is liable unto Ms. Kimball for the intentional tort of battery.

31.

CF Industries is the employer of Mr. Falcon.

32.

Pursuant to La. C.C. art. 2320, CF Industries is answerable for the damages occasioned by Mr. Falcon because at the time of his battery of Ms. Kimball, Mr. Falcon was in the course and scope of his employment.

33.

Mr. Falcon's battery of Ms. Kimball occurred at the CF Plant, which are the premises of Mr. Falcon's employer.

34.

Mr. Falcon's battery of Ms. Kimball occurred during the work-day and while Mr. Falcon was on duty at the CF Plant.

35.

Mr. Falcon's battery of Ms. Kimball was incidental to the performance of Mr. Falcon's duties as a supervisor of Ms. Kimball and resulting from a work order issued from CF Industries to SKR.

36.

Mr. Falcon used his supervisory position and the exercise of official and legitimate CF Industries business, cleaning a CF Industries warehouse, to place Ms. Kimball in an exposed and compromised position to effectuate the battery upon Ms. Kimball.

37.

Mr. Falcon and CF Industries are liable to Ms. Kimball for all general and special damages proven at the trial of this matter.

WHEREFORE, Plaintiff, Brittany D. Kimball, prays that there be service and citation upon the Defendants and that after all legal delays and proceedings that there be judgment rendered in favor of the Plaintiff and against Defendants as follows:

- As to SKR Construction, LLC and CF Industries, *in solido*, for Ms. Kimball's back-pay, lost employment benefits, costs associated with obtaining a new job, mental and emotional anguish, punitive damages, reasonable attorney's fees, and costs. Plaintiff also prays for any and all other relief to which she may be entitled at law or in equity under these premises;
- In the alternative, as to Joshua Falcon and CF Industries, *in solido*, for all special and general damages recoverable under law for the intentional tort of battery, including mental anguish, emotional anguish, lost wages, and any other damages proven at the trial of this matter.

Respectfully Submitted:

**THE BULLMAN LAW FIRM, LLC**

*/s/James R. Bullman*
James R. Bullman, Bar Roll No. 35064 –T.A.
201 St. Charles Street
Baton Rouge, LA 70802
Telephone:  (225) 993-7169
Facsimile:  (225) 387-3198
Email: james@thebullmanlawfirm.com
*Attorney for Plaintiff*